IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02384-WYD-CBS

KEVIN FRANCIS JONES
     Plaintiff,

v.

MARCUS LEHMKUHL,
CITY OF COLORADO SPRINGS, COLORADO,
R.A. YOHN,
AL HARMON,
BRET POOLE, and
ONE TO TEN UNKNOWN DEFENDANTS TO BE IDENTIFIED THROUGH DISCOVERY AND
TRIAL, sued individually and in their official capacities,
     Defendants.

_____

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
_____

Magistrate Judge Shaffer

     THIS MATTER comes before the court on Defendants City of Colorado Springs, Marcus

Lehmkuhl, R.A. Yohn and Bret Poole's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6) (doc. #40), filed on March 33, 2012.  Plaintiff Kevin Francis Jones filed his Response to

Defendants' Motion to Dismiss (doc. #53) on May 29, 2012, and Defendants filed a Reply in Further

Support of Its (sic) Motion to Dismiss (doc. #58) on June 12, 2012.  The court has carefully reviewed

the briefs submitted by the parties, the transcript of proceedings on January 31, 2012 (doc. #83), the

entire court file, and the applicable case law.  For the following reasons, the court recommends that

Defendants' motion be granted.

## PROCEDURAL BACKGROUND

     Mr. Jones initiated this *pro se* action on September 12, 2011 while he was incarcerated in the

Federal Correctional Institution in Sheridan, Oregon.  Plaintiff's original 16-page Complaint (doc. #1)

named ten defendants[1] and "one to ten unknown defendants to be identified through discovery and trial," and asserted eleven claims for relief under federal and state law.  On October 19, 20122, Mr. Jones filed his First Amended Prisoner Complaint (doc. #4), which was followed by a Second Amended Prisoner Complaint (doc. #12) on January 6, 2012.  This court entered an Order to Dismiss in Part and To Draw Case to a District Judge and to a Magistrate Judge (doc. #13) on January 18, 2012.  That Order noted that Mr. Jones was alleging that

> the State of Colorado issued him a Colorado Medical Marijuana Card, also known as a "red card," which authorizes him to grow a certain number of marijuana plants. Plaintiff alleges that he uses the marijuana he grows for medical purposes and has also established a business, "Nature's Remedy," to provide medical marijuana products and services.  He operates "Nature's Remedy" out of his residence in Colorado Springs. Plaintiff alleges that pursuant to Colorado's medical marijuana laws, COLO. REV. STAT. § 12-43.3-101, *et seq.* (eff. July 1, 2010), Nature's Remedy was allowed to sell up to thirty percent of its total on-hand inventory to another Colorado licensed medical marijuana licensee.  Plaintiff alleges that before state statutory law clarified this business practice as legal, however, Defendant Lehmkuhl obtained a search warrant for Plaintiff's residence that was executed on February 19, 2010 by Defendant Colorado Springs police officers Lehmkuhl, Poole, Harmon, Yohn and other unknown officers, with the assistance of El Paso County Sheriff's Department swat team.  Mr. Jones states that the Defendant Colorado Springs police officers "broke down the door," placed him under arrest even after he told them he had a "red card," and then searched his residence.  During the search, the police found two "grow rooms" containing numerous marijuana plans and seized 444.6 grams of marijuana.  Officers also seized Plaintiff's "red card," as well as other documentation related to the operation of Nature's Remedy. Plaintiff was released at the conclusion of the search and then re-arrested on various drug-related charges.[2]  The criminal charges were dismissed in April 2010 upon the prosecutor's motion, after Plaintiff was detained for approximately forty-six days.  Mr. Jones claims that the individual police officer defendants lacked probable cause to search his residence, to twice arrest him, and to thereafter detain him, in violation of his Fourth Amendment rights and Fourteenth Amendment due process rights.  He further claims that the municipal and supervisory Defendants are liable for failure to train and supervise.  Plaintiff also brings several supplemental state law claims.  Mr. Jones seeks declaratory relief and damages.

---

[1]The original Complaint included among the named defendants the City of Colorado Springs, Colorado, Marcus Lehmkuhl, R.A. Yohn, Al Harmon and Bret Poole, as well as the Colorado Springs Police Department, Richard Myers, Lionel Rivera, El Paso County, Colorado, and the El Paso County Sheriff's Department.

[2]The Second Amended Prisoner Complaint also alleges that Mr. Jones was charged by state authorities with possession of weapons by a previous offender in violation of C.R.S. § 18-12-108.

Although I determined that "Mr. Jones' claims against Defendants Lehmkuhl, Yohn, Harmon, Poole and the City of Colorado Springs do not appear to be appropriate for summary dismissal," the court dismissed Defendants Richard Myers, Lionel Rivera, the Colorado Springs Police Department, El Paso County, Colorado, and the El Paso County Sheriff's Department as parties to this action.[3]  The January 6, 2012 Second Amended Complaint remains the operative pleading and the case is proceeding against Defendants Lehmkuhl, Yohn, Harmon,[4] Poole and the City of Colorado Springs and "one to ten unknown Defendants to be identified through discovery and trial."[5]

Although state authorities dismissed their charges, the federal grand jury on April 7, 2010 returned an Indictment against Mr. Jones in Criminal Case No. 10-cr-00188-REB, charging violations of 18 U.S.C. § 922(g)(1) [possession of firearms by a previously convicted felon], 21 U.S.C. § 841(a)(1) [unlawfully, knowingly and intentionally possessing with the intent to manufacture, distribute and dispense by cultivation 100 or more marijuana plants], and 21 U.S.C. § 841(a)(1) [unlawfully and knowingly possessing with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of marijuana].  On October 27, 2010, Mr. Jones filed in his criminal case a motion to suppress "all evidence discovered as a result of the searches of [his residence at] 4170 Hunters Run Trail," arguing that law enforcement officers "engaged in deliberate or reckless

---

[3] In particular, I noted that Mr. Jones had failed to allege any facts that would plausibly demonstrate an affirmative link between Defendant Myers (the Colorado Springs Chief of Police) or Defendant Rivera (then the mayor of Colorado Springs) and the alleged constitutional violations.  The court concluded that the conclusory assertions directed toward Defendant Myer and Rivera did not sufficiently allege their personal participation in any violation of Plaintiff's constitutional rights.

[4] On February 6, 2012, the Summons for Defendant Harmon was returned as unexecuted as he was no longer employed by the Colorado Springs Police Department. As of the date of this Recommendation, Mr. Harmon has not been served in this action.

[5] As to these unknown and unnamed defendants, there is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.  *See, e.g,*, *Watson v. Unipress, Inc.*, 733 F.3d 1386, 1388 (10th Cir. 1984).  To the contrary, the Federal Rules provide that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).

falsehoods or omissions of material fact" in drafting search warrant affidavits and that the resulting

"search warrant affidavits used to authorize the searches of Mr. Jones' residence did not support a

finding of probable cause."  Before Judge Blackburn could rule on the motion to suppress, Mr. Jones

entered into a Plea Agreement with the government and subsequently entered a plea of guilty to Count

One of the Indictment.[6]  Judgment  was entered against Mr. Jones on Count One on May 10, 2011,

under which he was committed to the custody of the Federal Bureau of Prisons for a term of forty-six

months. On May 24, 2012, Mr. Jones filed a "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence" arguing that his criminal defense counsel had provided ineffective assistance based

on a "failure to follow through with Motion to Suppress" because "the evidence . . . was found during

an illegal search by state officials."  Mr. Jones filed his "Traverse/Movant's Reply Brief Under 28

U.S.C. § 2255" on August 13, 2012.  As of the date of this Recommendation, Plaintiff's motion under

28 U.S.C. § 2255 remains pending.

    Meanwhile in this civil case, on March 22, 2012, Defendants filed their motion to dismiss.  Mr.

Jones was granted an extension of time, up to and including May 29, 2012, in which to file his

response.[7]  Briefing on the pending motion to dismiss closed on June 12, 2012 with the filing of

Defendants' reply brief.  During this same period, Mr. Jones filed a Motion to Compel Production

(doc. #54), to which Defendants responded, only to have Plaintiff withdraw that motion as "moot" on

July 9, 2012.  *See* Plaintiff's Motion to Withdraw Motion to Compel (doc. #60).

    With the motion to dismiss still pending, Mr. Jones filed a Motion for Leave to File Third

Amended Prisoner Complaint (doc. #61) on July 9, 2012.  This proposed pleading sought to rejoin

---

[6]In a Statement by Defendant In Advance of Plea of Guilty, filed on January 14, 2011, Mr. Jones affirmatively stated that he was "satisfied with [his] attorney" and "believe[d] that [he had] been represented effectively and competently in this case."

[7]Unfortunately, during this interim period, Mr. Jones was transferred to a new correctional facility and the court's mail was returned as undeliverable.

Richard Myers and Lionel Rivera, and for the first time to join Anne H. Turner, who was identified as

a "Senior Attorney for the Colorado Springs Police Department."  Defendants filed their Response to

Plaintiff's Motion for Leave to File Third Amended Prisoner Complaint (doc. #64) on July 30, 2012, in

which they argued that "[v]ery little of Plaintiff's proposed Third Amended Prisoner Complaint is new,

and none of the new allegations cure the defects in Plaintiff's Second Amended Complaint that

Defendants identified in their pending Motion to Dismiss."  On the very same day that Defendants

were characterizing the proposed Third Amended Complaint as futile, Mr. Jones filed an Amended

Motion for Leave to File Third Amended Prisoner Complaint (doc. #65).[8]  Plaintiff suggested that the

Amended Motion should be granted as the attached Third Amended Prisoner Complaint was

"corrective in nature" and contained "additional details, which this Court should find sufficient, to

include Defendant(s) Richard Myers, Lionel Rivera, and Anne H. Turner."  Although Defendants

responded to the Amended Motion for Leave on August 13, 2012, one week later Mr. Jones filed a

Status Report and Motion to Strike (doc. # 69), claiming that he had never received Defendants'

response in opposition to his first Motion for Leave to Amend.  On August 21, 2012, Defendants re-

served their Response to Plaintiff's Motion for Leave to File Third Amended Prisoner Complaint.  I set

a hearing on all pending motions for January 31, 2013.  *See* Certificate of Service (doc. #72).

Plaintiff filed a Motion for Stay of Civil Proceedings (doc. # 78), asking that all proceedings in

this civil case be stayed until Judge Blackburn ruled on his motion under 28 U.S.C. § 2255 in Criminal

Case No. 12-cr-00188-REB.  Mr. Jones suggested that a stay was appropriate because his § 2255

petition "addresses the same facts underlying his cause of action in both cases," and because "[t]he

findings that may be established in the 2255 petition may be prima facia (sic) proof of or at least

exculpatory evidence to support Mr. Jones civil claims . . . [as] both cases stem from an unlawful

---

[8]Mr. Jones' Amended Motion for Leave to File Third Amended Prisoner Complaint (doc. #65) rendered moot his earlier Motion for Leave to File Third Amended Prisoner Complaint (doc. #61).

search and seizure."   On the same day that he moved to stay all proceedings in this case, Mr. Jones

filed a "Motion for Extension of Time to Acquire Interrogatories and Motion to Set a New Hearing

Date for All Pending Motions" (doc. #76), suggesting that "defendants will not be prejudiced by [his]

request for 90 days in order to complete interrogatories and for Plaintiff to be transferred to the

Halfway House where he will then be able to physically attend any court hearings and have his files

back in his possession."   Plaintiff asked that I reschedule the hearing in his case for "any time after

April 30, 2013."   With an Order (doc. #80) dated January 23, 2013, this court denied Plaintiff's request

for extension of time after noting that "discovery [in this case] has not yet commenced" and "Mr.

Jones has completed his briefing regarding the pending motions and need not serve interrogatories at

this time."

At the hearing on January 31, 2013, the court addressed Defendants' motion to dismiss.  I also

heard argument on Mr. Jones' Amended Motion for Leave to File Third Amended Prisoner Complaint

(doc. #65).  At the conclusion of the January 31st hearing, I advised the parties that I was

recommending, for the reasons stated on the record from the bench, that Plaintiff's Amended Motion

be denied.  *See* Courtroom Minutes/Recommendation Pursuant to Rule 72(b) (doc. #81).  On February

6, 2013, my chambers staff mailed to Mr. Jones a copy of the transcript from the January 31, 2013

hearing and advised Mr. Jones that "[a]ny objection to the Recommendation shall be filed on or before

Thursday, February 21, 2013."  *See* Order (doc. #84).  I reiterated that deadline in a subsequent Notice

of Advisement (doc. #85) sent to Mr. Jones on February 7, 2013.[9]

Defendants have moved to dismiss the Second Amended Complaint in its entirety.  That

pleading asserts eleven claims for relief, each arising out of the search of Mr. Jones' residence at 5170

---

[9]Notwithstanding the court's advisement, Mr. Jones did not file a timely objection to my
recommendation regarding the Amended Motion for Leave to File Third Amended Prisoner
Complaint.

Hunters Run Trail.  Plaintiff's First Claim is styled "Constitutional Claims under 42 U.S.C. §

1983/1988," and contends that the search on February 19, 2010 was not based on probable cause, but

rather material omissions and false statements by Defendant Lehmkuhl, and resulted in Mr. Jones'

arrest without a warrant, reasonable suspicion or probable cause.  The First Claim contends that "the

Defendants jointly and severally" violated the Plaintiff's constitutional rights

> a.  to be free from unreasonable arrest, search and seizure
> b.  to be free from warrantless arrest, search, and seizure
> c.  to be free from search and seizure without probable cause
> d.  to be free from use of excessive force
> e.  to be free from intentional infliction of great emotional distress
> f.  to be free from being subjected to outrageous conduct
> g.  to be free from negligence in the performance of police duties
> h.  to be free from summary punishment without trial
> i.  to due process of law
> j.  to be secure in his right to bodily integrity
> k.  to be free from malicious prosecution
> l.  to be free from a sham prosecution
> m.  to freedom of expression.

(*See* doc. # 12 at 16 of 29).

The Second and Third Claims for Relief do not set forth additional facts or refer to specific

named Defendants, but merely "repeat[ ] and reiterate[ ] each and every allegation contained in the

paragraphs of this complaint."  (*See id.* at 17-18 of 29).  The Second Claim seeks damages for

"Intentional and/or Reckless Outrageous Conduct," while the Third Claim alleges "Violations of

Bodily Integrity."  Plaintiff's Fourth Claim for "Failure to Train" purports to "repeat and reiterate" all

preceding allegations, and then makes the conclusory statement that "the facts described herein present

institutionalized practices which were known and ratified by Defendant(s) City of Colorado Springs."

(*See id.* at 19 of 29).  The Fifth Claim for Relief seeks damages "in the amount of $2,000" for

"Damage to Property," based on the allegation that the "Defendant(s), inter alia, failed to knock and

announce and instead broke down the front door which caused unnecessary damage to the residence

and property of the Plaintiff."  (*See id.* at 21 of 29).  The Sixth Claim for "Interference with Business

Relations and/or Prospective Advantage" contains no additional factual allegations, and merely avers the "Defendant(s)" injured "Plaintiff through their actions described above." (*See id.* at 22 of 29).

Plaintiff's Seventh Claim is for "Damage to Property." (*See* doc. # 12 at 23 of 29).   Plaintiff alleges that "the Defendant(s)" failed "to abide by" Amendment 20 of the Colorado Constitution and "Statute 0-4-287 ll(e)" and that after state charges were dismissed against Mr. Jones, "Defendant(s)" failed to return "approximately 181 marijuana plans, approximately 1 lb of marijuana, approximately 5-6 light bulbs; [and] other miscellaneous property" seized during the search on February 19, 2010. The Eighth Claim for "Stigma" merely alleges that "Defendant(s)" "impugned the Plaintiff's good name, reputation, honor, and/or integrity because of their conduct as described above" and to the extent they made false statements "that impugned the Plaintiff's good name regarding a term coined by the Defendant(s) 'clandestine grow operation.'" (*See id.* at 24 of 29).  The Ninth Claim for Relief seeks damages for "Arbitrary Abrogation of State Created Liberty." (*See id.* at 25 of 29).  More specifically, Mr. Jones contends that Colorado law created a liberty interest "that Plaintiff enjoyed including being able to grow, use, and sell marijuana for medicinal purposes" and that "Defendant(s)" denied Plaintiff due process by acting "in an arbitrary and/or capricious manner" in violation of the Fourteenth Amendment.

The Tenth Claim contends that "the Defendant(s) are liable under the Danger-Creation Exception against deliberately wrongful government decisions and for their participation in such conduct." (*See id.* at 26 of 29).  Mr. Jones contends, *inter alia*, that he was "a member of a limited and specifically defined group, ie. (sic), a group of individuals who were authorized by the state to possess, use, and cultivate marijuana for medicinal purposes," that Defendants' "conduct placed the Plaintiff at substantial risk of serious, immediate, and proximate harm," that the risk of harm was "both obvious and known," that Defendants "acted recklessly in conscious disregard of that risk," and that "[s]uch conduct, when viewed in total, is shocking to the conscience."  Notably, this Claim does not allege any

8

additional facts in support of these conclusory assertions and merely "repeats and reiterates each and every allegation contained in the paragraphs of this complaint."

The Eleventh Claim for Relief asserts "State Law Theories of Recovery." (*See id.* at 27 of 29). After again incorporating by reference earlier factual allegations, Plaintiff concludes that "Defendant(s)" conduct "constitute[s] actionable torts under Colorado common law and the laws of the State of Colorado including" false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, intentional infliction of emotional distress, outrageous conduct, negligent infliction of emotional distress/outrageous conduct, reckless infliction of emotional distress/outrageous conduct, negligence, and gross negligence.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010), quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendants attached seven exhibits to their motion to dismiss. (*See* docs. # 40-1 through 40-7). The first and second exhibits are search warrant applications and affidavits submitted by Detective M. Lehmkuhl and dated February 3 and 16, 2010, respectively. The third exhibit is a certified copy of the Indictment filed in *United States v. Kevin Francis Jones,* Criminal Case No. 10-cr-00188-REB, while the fourth exhibit is a copy of the motion to suppress filed on behalf of Mr. Jones in that same case. Defendants' fifth and six exhibits are the Plea Agreement and Statement of Facts Relevant to Sentencing and the Judgment filed in Criminal Case No. 10-cr-00188-REB. The seventh exhibit

9

attached to Defendants' motion to dismiss is an Affidavit of Victoria McColm, the Risk Supervisor for the City of Colorado Springs.  Ms. McColm states that she conducted a complete review of the claims database maintained by the City of Colorado Springs and found no "written notice of claim or other letter or communication filed by or on behalf of Kevin Francis Jones."[10]  In his Response, Plaintiff Jones contends that Defendants' exhibits cannot be considered by the court without converting the instant motion to a motion for summary judgment and without giving Mr. Jones notice of the court's intent to analyze the motion under a Fed. R. Civ. P. 56 standard.

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Exceptions to this general rule include:  documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice."  *Id.*, quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *Cf. State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1126 no.7 (10th Cir. 2008) (holding that the court may take judicial notice of documents in the public record, including its own docket); *Vaninetti v. Western Pocohontas Properties, Ltd Partnership*, No. 11-cv-02308-LTB-MEH, 2012 WL 4359302, at *2 (D. Colo. Sept. 24, 2012) ("in ruling on a Rule 12(b)(6) motion to dismiss, . . . a court may properly consider facts subject to judicial notice such as court files and matters of public record").  If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which the court may consider in ruling on a motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1281, 1384 (10th Cir. 1997).

---

[10]Defendants offered Ms. McColm's Affidavit in support of their contention that Mr. Jones failed to comply with the notice requirement incorporated in the Colorado Governmental Immunity Act, C.R.S. § 24-10-109.  Because the court is recommending dismissal of the state law claims on other grounds, I need not resolve this particular issue.

Defendants' first two exhibits, the search warrant applications and affidavits submitted by Defendant Lehmkuhl, are specifically referenced in the Second Amended Complaint. Moreover, Mr. Jones does not challenge the authenticity of these exhibits in his Response. The third, fourth, fifth and sixth exhibits are copies of documents contained in the records of this United States District Court and presumably are well-known to Mr. Jones as they were public filings in Criminal Case No. 10-cr-00188-REB. The court may, and will, consider the foregoing exhibits without converting the pending motion to a motion for summary judgment. However, out of an abundance of caution, the court will disregard the McColm Affidavit as Mr. Jones has not had an opportunity to conduct discovery in this case. Having excluded the McColm affidavit from its consideration, this court will proceed to analyze the pending motion under a Rule 12 standard.

As a threshold matter, Mr. Jones suggests that Defendants are precluded from challenging the legal sufficiency of the Second Amended Complaint based upon the court's earlier determination that the original Complaint satisfied the requirements of 28 U.S.C. § 1915. (*See* doc. # 53 at 2 of 9). This argument relies upon a mis-perception of the difference between § 1915 and Rule 12(b)(6). While a district court may permit a litigant to commence a suit *in forma pauperis* pursuant to § 1915(a), the court retains the authority to dismiss the case at any time if the court determines the action is "frivolous or malicious," or "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2). As the Supreme Court explained in *Neitzke v. Willliams*, this provision "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rules of Civil Procedure 11." 490 U.S. 319, 327 (1989), *abrogated on other grounds by Twombly*, 550 U.S. at 544. However, the Supreme Court also emphasized that "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is

appropriate," even if dismissal on the basis of frivolousness was not.  This same distinction was noted

by the Tenth Circuit in *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991), which held

that "dismissals under § 1915(d)[11] are governed by a legal standard distinct from dismissals pursuant to

Rule 12(b)(6)."  Plaintiff's ability to pass the initial screening process under § 1915 does not preclude

Defendants from challenging the legal sufficiency of the Second Amended Complaint under Rule

12(b)(6).

A.      *Pleading Requirements*

        To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state

a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  As the Tenth Circuit

explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a

reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to

frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to

relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at

556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere

speculation.  *Id.*

> Even though modern rules of pleading are somewhat forgiving, a complaint still must
> contain either direct or inferential allegations respecting all the material elements
> necessary to sustain a recovery under some viable legal theory.  The plausibility
> standard requires that relief must plausibly follow from the facts alleged, not that the
> facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos. 08-cv-

02790-PAB-MJW, 08-cv-02794-PAB-MJW, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009)

---

[11]The provisions in § 1915(d) have been re-stated in what is now § 1915(e)(2)(B).

(internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).[12]

The plausibility standard serves two purposes:  "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation and internal quotation marks omitted).  The former objective is particularly important in § 1983 actions with multiple defendants.

> The *Twombly* standard has greater "bite" in these contexts, "reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest stage of a litigation.'" Therefore, in § 1983 cases, a plaintiff must "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ."

*VanZandt v. Oklahoma Department of Human Services*, No. 06-6377, 276 F. App'x. 843, 847 (10th Cir. May 5, 2008).  *See also Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term "Defendants" or a list of defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

With limited exceptions, Plaintiff's Second Amended Complaint does not provide the notice required by Fed. R. Civ. P. 8 and the *Twombly-Iqbal* standard.  The Second Amended Complaint

---

[12]The caption of the Second Amended Complaint alludes to additional unknown defendants "to be identified through discovery and trial." *But see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions).  In the absence of legally sufficient allegations against the named Defendants, Plaintiff's "unknown Defendants" are properly dismissed from this action.

names individual Defendants Lehmkuhl, Yohn, Harmon and Poole.  Mr. Jones specifically alleges that

Defendant Lehmkuhl prepared the search warrant affidavits that resulted in the thermal-imaging search

on February 3, 2010 and the physical search that occurred on February.  There are no facts alleged that

would demonstrate Defendants Yohn, Harmon or Poole played any role in preparing those affidavits or

securing those warrants.  The Second Amended Complaint further alleges that "DEFENDANT(S)

LEHMKUHL, POOLE, HARMON, YOHN and other UNKNOWN DEFENDANTS conducted a

search of the residence and business of Plaintiff."  (*See* doc. # 12 at 13 of 29).  Successive paragraphs

then describe how the search was conducted by 'the DEFENDANT(S)."  None of those paragraphs

attribute any specific action to Defendants Lehmkuhl, Poole, Harmon or Yohn.  Elsewhere, the Second

Amended Complaint alleges that "when the DEFENDANT(S) who participated in the search of

residence/business (SEARCHING DEFENDANT(S) arrived they failed to "knock and announce."

(*See id.* at 14 of 29).  Plaintiff Jones makes several references to "the SEARCHING DEFENDANTS"

and identifies the "SEARCHING DEFENDANT(s)" as the person or persons who placed him under

arrest. Yet, once again, there are no allegations that specifically include Defendants Lehmkuhl, Poole,

Harmon or Yohn within the group denominated as "SEARCHING DEFENDANT(S)."  For the most

part, Plaintiff's claims for relief simply refer to "the Defendant(s)."  Only the Fourth Claim refers to

Defendants Lehmkuhl, Poole, Harmon or Yohn by name.

     Even under the liberal pleading standards that govern a *pro se* complaint, the Second

Amended Complaint is wholly inadequate to give Defendants Poole, Harmon or Yohn sufficient notice

of their alleged misconduct to prepare an appropriate defense.  The allegation that Defendant

Lehmkuhl secured search warrants based on material omissions and false statements does provide

adequate notice of a Fourth Amendment violation by that particular defendant.  In all other respects,

the Second Amended Complaint should be dismissed for failure to meet the governing pleading

standard.  However, in the event that Mr. Jones attempts to submit a further amended pleading, the

court will address other issues raised in Defendants' motion to dismiss.

B.   *Plaintiff's Federal Law Claims*

The Second Amended Complaint seeks to redress "the deprivation, under color of law, of right secured by the Constitution of the United States" by invoking the court's subject matter jurisdiction under 18 U.S.C. § 1331.  Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law."  *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  To assert claims under § 1983, Mr. Jones must allege a deprivation of a federal or constitutional right by a person acting under color of state law.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  Liberally construing the Second Amended Complaint, it appears that Plaintiff is attempting to allege violations under the First, Fourth, Fifth, Sixth and Fourteenth Amendments.[13]

1.   The First Claim

Plaintiff contends that each of the individually named Defendants violated his right to be free from unreasonable search, seizure and arrest, as well as his right to be free from  "warrantless arrest, search, and seizure," and "search and seizure without probable cause."  In sum, the First Claim alleges a Fourth Amendment violation stemming from the February 19, 2010 search of his residence and his subsequent arrest.  Defendants correctly argue that Plaintiff's Fourth Amendment claim is barred by the favorable termination rule first announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Plaintiff's Response brief does not address, or even attempt to refute, this argument.

In *Heck*, the Supreme Court held that a § 1983 action seeking money damages is not cognizable

---

[13]To the extent that Mr. Jones is invoking the Fifth Amendment, that portion of the Second Amended Complaint must be dismissed, since there is no allegation that the named defendants were acting as federal law enforcement officers.  *Cf. Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States").  To the extent Mr. Jones' has any viable due process claims, they must be brought under the Fourteenth Amendment.

if a favorable decision would "necessarily imply the invalidity of [a] conviction or sentence" unless

such a sentence has previously been invalidated.  As the Supreme Court explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into
> question by a federal court's issuance or a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-7.  "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its

more lenient pleading rules, to challenge their conviction or sentence without complying with the more

stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F. 3d 1277, 1279 (10th

Cir. 2007) (citation omitted).  "The starting point for the application of *Heck* then is the existence of an

underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Id.*  "In

other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be

directly invalidating." *Id.*

Mr. Jones concedes that underlying this case, as well as his conviction in 10-cr-00188-REB, is

the assertion that he was subject to an illegal search, seizure and arrest.  In moving to suppress

evidence discovered during the search of his residence, Mr. Jones argued in his criminal case that law

enforcement officers made "reckless (or deliberate) falsehoods and omissions of material fact" in

drafting their search warrant affidavits, and that but for these alleged falsehoods and omissions,

"probable cause would not have existed to search" his residence.  *See* Exhibit 4 (doc. #40-4) attached

to City Defendants' Motion to Dismiss.  *But see Wheeler v. Scarafiotti*, Nos. 02-2297, 02-2345, 85 F.

App'x 696, 700 (10th Cir. Jan. 8, 2004) ("[c]ertainly an attempt to convince a jury that the officers

falsified the very reports that led to [plaintiff's] conviction would cast doubt on that conviction").

Moreover, Mr. Jones argued in his suppression motion that even if "one disregards the material

falsehoods and omissions" in the search warrant affidavits, Colorado law allowed an individual to

"have a [marijuana] grow operation in his residence."  Therefore, "the state-issued warrants were not supported by probable cause, and the Fourth Amendment was violated."  *See* Exhibit 4 (doc. #40-4) at 14, attached to City Defendants' Motion to Dismiss.  Mr. Jones makes these same arguments in his § 2255 petition.  *See* Plaintiff's Motion for Stay of Civil Proceedings (doc. #78).  At this juncture, it is clear that Plaintiff's conviction has not been reversed, expunged, or declared invalid in any way.

This court concludes that Mr. Jones' claims for unlawful search and seizure "would necessarily imply the invalidity" of his conviction and thus are barred by *Heck*.  *Cf. Johnson v.  Pottawotomie Tribal Police Department*, No. 10-3242, 411 F. App'x 195, 199 (10th Cir. Feb. 9, 2011) (plaintiff's argument that he was subject to an illegal arrest and search without probable cause "would necessarily imply the invalidity of his sentence because it would have been based upon evidence gathered during an illegal arrest and thus would have to be suppressed; this claim is "precisely the type that *Heck* mandates" may not be pursued through a § 1983 complaint); *Vaughn v. Watt,* No. 10-cv-02213-BNB, 2010 WL 4595703, at *2 (D. Colo. Nov. 5, 2010 ("A judgment in favor of Mr. Vaughn's claim that Defendants violated his constitutional rights, when they conducted a search of his vehicle, necessarily would imply the invalidity of his state court criminal proceedings.").

The First Claim separately alleges that the individual Defendants violated his constitutional right to be free from the use of excessive force, as well as his right to be free from summary punishment.  To effect an arrest, police officers are not required to use the least intrusive means to detain the arrestee, only reasonable means.  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005).  The Fourth Amendment prohibits unreasonable actions in executing a search warrant, including the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged or unnecessary period of time.  *Los Angeles County, California v. Rettele*, 550 U.S. 609, 614 (2007).  As the Tenth Circuit noted in *Koch v. City of Del City*, "excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." 660 F.3d 1228, 1246 (10th Cir.

2011).  *Cf. Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (holding that "[a]ll claims that police officers used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its 'objective reasonableness' standard.").  "[I]n a handcuffing case 'to recover on an excessive force claim, a plaintiff must show that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional."  *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009).  The court in *Fisher* noted that because handcuffing itself is not necessarily an excessive use of force in connection with an arrest, a plaintiff must allege an actual non-de minimis injury caused by applying the handcuffs.  *Id.* at 899.

As for Plaintiff's reference to summary punishment, in *Screws v. United States*, the Supreme Court recognized that a person acting under color of state law who "decide[s] to take the law into their own hands and act as prosecutor, jury, judge and executioner plainly act[s] to deprive a prisoner of the trial which due process of law guarantees him."  325 U.S. 91, 106 (1945).  However, "[a] right to be free from summary punishment has been interpreted as a Fourth Amendment excessive force claim in a case where the bases for multiple constitutional claims was not entirely clear."  *Underwood v. Commonwealth of Pennsylvania*, 2006 WL 1147263, at *4 n.1 (E.D. Pa. Apr. 26, 2006).

Here, Plaintiff's excessive force and summary punishment allegations appear to relate to the Defendants' decision to place him in handcuffs for some unspecified period during the search on February 19, 2010.[14]  The First Claim merely states that Mr. Jones was placed under arrest "by

---

[14]These particular theories of recovery are not barred by *Heck*, as the individual Defendants' alleged use of excessive force or infliction of summary punishment would not necessarily imply the invalidity of his arrest or the search of his residence.  *Cf. Beck v. City of Muskogee Police Department*, 195 F.3d 553, 557 (10th Cir. 1999) (holding that the plaintiff's challenge to his arrest would not implicate any of the elements of his rape charge or his probation revocation); *Hunter v. Town of Edwards*, 871 F. Supp. 2d 558, 565 (S.D. Miss. 2012) (holding that an arrestee's allegations of excessive force were not necessarily inconsistent with the arrestee's conviction of malicious prosecution, and thus not barred by *Heck*).

immediately handcuffing him and placing him in the rear of a police vehicle," and that "after an extended period of time the Plaintiff was let out of the police vehicle and allowed to leave." 9*See* doc. # 12 at 14 of 29).  Although the First Claim alleges that Mr. Jones "suffered damages and injuries," there are no well-pled facts that describe the manner in which Mr. Jones was handcuffed, the length of time during which he was restrained, or any actual physical injury that Plaintiff attributes to being handcuffed.  In short, the First Claim fails to allege sufficient facts to plausibly state an excessive force violation or unconstitutional summary punishment under the Fourth Amendment.  Yet, without those supporting facts, Plaintiff's excessive force and summary punishment claims rest on nothing more than single conclusory statements of law.  *Cf. Rhoden v. City of Lakewood, Colorado*, No. 11-cv-01734-PAB-BNB, 2013 WL 878680, at *3 (D. Colo. Mar. 8, 2013) (in a case alleging violations under the Fourth and Fourteenth Amendments, noted that the court "need not accept conclusory allegations"). *See also Fresquez v. Minks*, No. 11-cv-02712-REB-KMT, 2013 WL 452292, at *3 (D. Colo. Feb. 6, 2013) ("A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.").  Plaintiff's excessive force and summary punishment claims, as drafted, should be dismissed.

Mr. Jones also has included within his First Claim an allegation that Defendants infringed upon his constitutional right to be free from malicious prosecution.  Analogizing to the common law tort of malicious prosecution, the Tenth Circuit has held that a § 1983 malicious prosecution claim requires a showing that

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011).  Mr. Jones's state charges arising from the search of his home were dismissed.  However, Plaintiff continues to challenge, in the wake of his

federal conviction, the validity of the probable cause determination that preceded the February 19, 2010 search.  To prevail on his malicious prosecution claim, Mr. Jones must establish in this case that there was no probable cause for his original arrest or the attendant search that uncovered the firearms that were the subject of the successful prosecution in 10-cr-00188-REB.  *Cf. Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) ("[A]t least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'").  Plaintiff's malicious prosecution claim necessarily implicates the outstanding criminal judgment in 10-cr-00188-REB, and is barred by *Heck*.

Apart from his Fourth Amendment-related allegations, Plaintiff's First Claim asserts violations of several other real or imagined constitutional rights.  *But see Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that § 1983 merely provides "a method for vindicating federal rights elsewhere conferred;" "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed"); *Soldal v. Cook County*, 506 U.S. 56, 70 (1992) (noting that "[c]ertain wrongs affect more than a single right," and where multiple violations are alleged, "we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional provision in turn.").  Each of these putative violations either fails to invoke a "right" cognizable under § 1983 or fails to satisfy the pleading standards imposed by Fed. R. Civ. P. 8 and the Supreme Court's recent decisions in *Twombly* and *Iqbal*.

So, for example, this court must recommend dismissal of the First Claim to the extent it purports to allege a constitutional violation predicated on a right to be free from intentional infliction of great emotion distress, or a right to be free from outrageous conduct. These allegations fail to state a claim for relief under § 1983.  *See, e.g., Singer v. Wadman*, 595 F. Supp. 188, 300 (D. Utah 1982) (noting "there is no constitutional right to be free from intentional infliction of emotion harm").  *See also Brainerd v. Potratz*, 421 F. Supp. 836, 840 (N.D. Ill. 1976) ("[N]ot every tort recognized under

state law is sufficient to pass the constitutional threshold as to allow the maintenance of an action under Section 1983.").  The same analysis dooms Plaintiff's attempt to allege a constitutional violation of his "right to be free from negligence in the performance of police duties."  The United States Supreme Court has made clear that not every tort or inflicted injury rises to the level of a federal constitution deprivation.  *See Paul v. Davis*, 424 U.S. 693, 699 (1976) (rejecting the suggestion that "every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establish[es] a violation of the Fourteenth Amendment"), *abrogation on other grounds recognized in Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1154 (10th Cir. 2001).  *See also Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended law of or injury to life, liberty or property."); *Rost ex rel. K.C. v. Steamboat Springs RE-3 Sch. Dist*, 511 F.3d 1114, 1126 (10th Cir. 2008) (holding that "negligent government conduct is insufficient to prove liability under § 1983").

The First Claim also asserts, in conclusory fashion, violations of Mr. Jones's right "to due process of law" and "to be secure in his right to bodily integrity."  Neither of these discrete claims can survive the pending motion to dismiss.  Analyzing the Supreme Court's decision in *Albright v. Oliver*, the Tenth Circuit concluded in *Becker v. Kroll* that

> [N]o § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment.  And although the plaintiff in *Albright* did not raise a *procedural* due process claim, we find *Albright's* reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component.  In the initial stages of a criminal proceeding, the Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is reasonable.  The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context. . . . Under the facts of this case, where criminal charges were brought but dismissed before trial, Becker must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution.

494 F.3d 904, 918-19 (10th Cir. 2007) (internal citations omitted). *Cf. Saucier v. Katz*, 533 U.S. 194,

204 (2001) (acknowledging that "claims of excessive force in the context of arrests . . . should be

analyzed under the Fourth Amendment's 'objective reasonableness standard,' not under substantive

due process principles"), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

Even if Mr. Jones could bring a due process claim under the Fourteenth Amendment, the

allegations in the Second Amended Complaint are not sufficient to survive a Rule 12(b)(6) motion.

There are no facts asserted that would suggest Mr. Jones was without post-deprivation state law

remedies or that those state law remedies were inadequate to satisfy procedural due process

requirements. *Id.* at 921. The Tenth Circuit cautioned in *Becker* that "[t]he protections of substantive

due process have for the most part been accorded to matters relating to marriage, family, procreation,

and the right to bodily integrity." *Id.* at 923 (quoting *Albright*, 510 U.S. at 272). *See also Moore v.

Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (observing that the Supreme Court has recognized a

liberty interest in bodily integrity in only very limited circumstances"). Even where a substantive due

process right has been recognized, that right has been predicated on "the right to be free of state

intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and

harmful as literally to shock the conscience of a court." *See, e.g., Hall v. Tawney*, 621 F.2d 607, 613

(4th Cir. 1980). Even assuming, as I must, the truthfulness of Plaintiff's allegations, the Second

Amended Complaint does not set forth any facts that rise to this standard.

The First Claim contends that Mr. Jones suffered a constitutional violation to the extent he was

subjected to a "sham prosecution." I am assuming that the "sham prosecution" in question involved

the state charges that were dropped.[15] In *Hopkins v. Oklahoma Public Employees Retirement System*,

_____

[15]To prevail under § 1983, Mr. Jones must allege facts that plausibly demonstrate that the
individual Defendants personally participated in the alleged constitutional violation. *See Henry v.
Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("[Section] 1983 imposes liability for a defendant's own
actions – personal participation in the specific constitutional violation complained of is essential.").

the Tenth Circuit rejected a sham prosecution claim brought under § 1983 after holding that the plaintiff "must meet a very high evidentiary burden . . . must show that 'one sovereign is so dominated by the actions of the other that the former is not acting of its own volition." 150 F.3d 1155, 1161 (10th Cir. 1998).   The Second Amended Complaint is devoid of any facts that would plausibly support such a theory.  It cannot be disputed that state and federal authorities, as separate sovereigns, have the independent right to prosecute the same person for similar conduct without violating the double-jeopardy bar.  *See Heath v. Alabama*, 474 U.S. 82, 88 (1985).  As the court noted in *United States v. Rashed*, 234 F.3d 1280, 1284 (D.C. Cir. 2000), "extensive law enforcement and prosecutorial cooperation between two sovereigns does not make a trial by either a sham."  Mr. Jones pled guilty to possession of firearms by a prohibited person in violation of 18 U.S.C. § 922(g)(1), having admitted in writing that his possession of those firearms was unrelated to and not in proximity to the marijuana also found in his residence.  Mr. Jones further admitted in his plea agreement that he was prohibited from possessing the firearms in question, having been previously convicted of attempted 2nd degree murder in 1988.  Moreover, possession of 100 or more marijuana plants with the intent to manufacture, distribute or dispense by cultivation is proscribed by the Controlled Substances Act, 21 U.S.C. § 841(a)(1), as is possession with the intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of marijuana.  It cannot be gainsaid that  federal authorities were empowered to pursue these charges regardless of any prosecutorial decisions made by the State of Colorado.  As the court in *Gil v. United States*, 4. F. Supp. 2d 760, 766 (N.D. Illinois 1998) acknowledged, "even significant cooperation between federal and state agencies is not enough to make the second prosecution a sham."  The court in *Gil* further noted that the "the sham prosecution" theory

---

The "sham prosecution" reference could not possibly relate to Plaintiff's subsequent federal prosecution since there are no facts in the Second Amended Complaint to suggest that any of the individual Defendants personally participated in those federal proceedings or in prosecutorial decisions made by the United States Attorney's Office.

has never been applied to claims for constitutional violations other than a violation of the double jeopardy clause.  In short, the Second Amended Complaint fails to properly allege a claim predicated on a "sham prosecution" theory and that portion of the First Claim should be dismissed.

Finally, to the extent that the First Claim purports to assert a violation of Plaintiff's First Amendment right to free expression, Mr. Jones has failed to allege facts that support such a theory.  To establish a First Amendment retaliation claim, Mr. Jones must plead that he was engaged in a constitutionally protected activity, that Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and that Defendants were substantially motivated as a response to Plaintiff's exercise of his First Amendment rights.  *See, e.g., Allen v. Avance*, No. 11-6102, 491 F. App'x 1, 5 (10th Cir. July 10, 2012).  At most, the Second Amended Complaint alleges that Mr. Jones applied for and obtained a state-issued medical marijuana card and a sales tax license for his business.  Plaintiff further states that he ran advertisements for his business in the local newspaper and was quoted in an article that appeared in the December 24, 2009 edition of the Colorado Springs Independent.  Even when construed liberally in Plaintiff's favor, these allegations do not plausibly suggest that the individually named Defendants were motivated in any way by Mr. Jones's exercise of his First Amendment rights.[16]  Indeed, the Second Amended Complaint does not allege the individually named Defendants were even aware of such a First Amendment exercise.  Plaintiff must base a First Amendment claim on more than conclusory statements or conjecture.

    2.    <u>The Third Claim</u>

The Third Claim alleges in summary fashion that Defendants "violated the bodily integrity of

---

[16]To the contrary, the Second Amended Complaint suggests that law enforcement officials' suspicions were aroused because "the Plaintiff occasionally had customers come to his house (where he lived with his mother), and he often transported marijuana from his house to a car to make deliveries."

the Plaintiff." (*See* doc. # 12 at 18 of 29).  This Claim offers no further explanation or additional facts to support this assertion.  If the Third Claim purports to allege a constitutional violation under the Fourth Amendment stemming from "Defendant(s)" use of handcuffs, it is duplicative of Claim One and could be dismissed on that ground alone.

Alternatively, Plaintiff may be asserting a common law claim for battery.  To support such a claim, Mr. Jones must establish the following elements: (1) that Defendants' acts resulted in physical contact with Plaintiff; (2) Defendants intended to make harmful or offensive contact with Plaintiff; and (3) the contact was harmful or offensive.  *See Adams v. Corrections Corporation of America*, 187 P.3d 1190, 1198 (Colo. App. 2008).  A plaintiff must prove that the defendant desired to cause harmful or offensive consequences by his actions.  *White v. Muniz*, 999 P.2d 814, 819 (Colo. 2000).  However, the Second Amended Complaint does not allege any facts suggesting how Defendants Lehmkuhl, Poole or Yohn engaged in harmful or offensive conduct.  Certainly, there is no allegation that any of these particular individuals placed Mr. Jones in handcuffs.  In short, Mr. Jones has pled facts that show nothing more than the ordinary discomfort or embarrassment associated with a public arrest.  *Cf. Fayer v. Vaughn*, 649 F.3d 1061, 1065 (9th Cir. 2011).

3.    The Fourth Claim

Mr. Jones is alleging that the wrongful conduct attributed to the individually named Defendants reflected "institutionalized practices which were known and ratified by Defendant(s) City of Colorado Springs," and that despite having knowledge of these "institutionalized practices," Defendants "have at no time taken any effective action to prevent personnel from continuing to engage in the misconduct and tortuous action described herein."  (*See* doc. # 12 at 1819-20 of 29).  More particularly, the Fourth Claim contends that Defendants' alleged failure to properly train includes, "the necessary cross referencing criminal investigations of 'clandestine marijuana grow operations' with those authorized under State Medical Marijuana Laws to verify they are not exempt from criminal

liability under State law prior to subjecting innocent citizens to searches, seizures, arrests and other damages."[17]

Section 1983 does not impose liability against a municipality under a theory of *respondeat superior. Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Municipalities may be liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. *Id.* at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (internal quotation marks and citations omitted). "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). "[T]o establish liability on a failure to train claim under § 1983, plaintiffs 'must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.' " *Giles v. Davis*,

---

[17]The Fourth Claim may be predicated on a misunderstanding of state law to the extent Mr. Jones presumes that a state-issued medical marijuana card is an absolute bar to criminal prosecution. That position is not supported by judicial precedents. *See, e.g., People v. Clendenin*, 232 P.3d 210, 215 (Colo. App. 2009) *(*holding that while Amendment 20 permitted the medical use of marijuana for patients who have registered with the state, the Amendment did "not change current law, [and] distribution of marijuana will still be illegal in Colorado" ).

427 F.3d 197, 207 n. 7 (3d Cir. 2005) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.

1997).  Thus, in order to succeed on such a claim, it must be proven that "the training deficiency

actually caused the injury."  *Reitz*, 125 F.3d at 145 (citing *City of Canton*, 489 U.S. at 391).

Moreover, the alleged failure to train must be accompanied by deliberate indifference to the

rights of the plaintiff.  *City of Canton*, 489 U.S. at 388.  *See also Carr v. Castle*, 337 F.3d 1221, 1229

(10th Cir. 2003) ("The deliberate indifference standard may be satisfied when the municipality has

actual or constructive notice that its action or failure to act is substantially certain to result in a

constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.");

*Bryan County, Okl. v. Brown*, 520 U.S. at 407 ("a plaintiff who seeks to establish municipal liability . .

. must demonstrate that the municipal action was taken with deliberate indifference as to its known or

obvious consequences.") (internal quotation marks and citation omitted); *Brammer-Hoelter v. Twin*

*Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) ("municipal liability may be based

on injuries caused by a failure to adequately train or supervise employees, so long as that failure results

from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations

omitted).

Plaintiff's "failure to train" claim is supported by nothing more than conclusory allegations.

There are no well-pled facts that demonstrate specific deficiencies in the training of any Colorado

Springs employees or police officers.  The Second Amended Complaint describes specific conduct

directed toward Mr. Jones by the named Defendants on specific dates.  Based solely on his own

experience, Plaintiff summarily alleges "institutional practices known and ratified by the City of

Colorado Springs," but offers no facts to support that sweeping statement.  Similarly, the Fourth Claim

states in conclusory fashion that Defendants "had prior notice" that their actions violated "Plaintiff's

Rights," yet nevertheless "took no steps to train their subordinates, correct their abuse of authority, or [

] discourage their unlawful use of authority."  There are no facts alleged that substantiate the assertion

that Colorado Springs police officers in the past have engaged in similar conduct, or in what way Defendants had "prior notice" of that conduct.  *See City of Canton*, 489 U.S. at 390-91 (the mere conclusory allegation that an officer is unsatisfactorily trained will not "suffice to fasten liability on the city.").

Nor are there any well-pled facts that would support the conclusory statement that the individual Defendants "tolerated" or "ratified" misconduct by other unnamed officers.  *Cf. Martin v. Dist. of Columbia*, 720 F. Supp.2d 19, 23 (D.D.C. 2010) (granting city's motion to dismiss § 1983 claim based on inadequate training when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations"); *Jones v. Natesha*, 151 F. Supp.2d 938, 944–45 (N.D. Ill. 2001) ("It is not enough for a plaintiff to aver a single, conclusory allegation that the defendants' conduct was deliberately indifferent to the plaintiff's constitutional rights.") (internal quotation marks and citation omitted).  Quite simply, Mr. Jones's allegations are insufficient to state a "failure to train" claim under § 1983.

4.    The Seventh Claim

This claim is broadly described as "damage to property," which would suggest a common law claim for trespass.  More specifically, Mr. Jones contends that "the Defendants failed to return property illegally seized" during the search of his residence, including "approximately 181 marijuana plants" and "approximately 1 lb. of marijuana."  (*See* doc. # 12 at 23 of 29).  Plaintiff contends that Defendants failed to comply with a notice posted in plain view at his residence, which purported to require law enforcement officers "to maintain [his medical marijuana] until guilt is proven in a court of law."  The Seventh Claim is predicated on the allegation that Defendants violated "Colorado Constitutional Amendment 20" and his posted notice by failing to return his property after state charges were dismissed.

The Seventh Claim is actionable under § 1983 only if Plaintiff was deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  On its face, the Seventh Claim appears to allege a violation of state law, which is not actionable under §1983.  *See Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2011) ("Section 1983 does not provide a basis for redressing violations of state law, only those violations of federal law done under color of state law.").  However, because Plaintiff is *pro se*, the court is required to liberally construe his claims.

The Tenth Circuit has held that a seizure under the Fourth Amendment "is a single act, and not a continuous fact."  *Snider v. Lincoln County Board of County Commissioners*, No. 07-6196, 313 F. App'x 85, 93 (10th Cir. June 5, 2008) (noting that "[f]ollowing a seizure there is an obligation 'to provide fair procedures to ensure return of the property when the State no longer has a lawful right to retain it'").  "A failure timely to return seized material which is without evidentiary value and which is not subject to forfeiture may state a constitutional or statutory claim."  *Davis v. Gracey*, 111 F.3d 1472, 1477 (10th Cir. 1997).  Assuming, *arguendo*, that Mr. Jones is attempting to assert such a claim, his allegations are fatally deficient.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  Yet the Second Amended Complaint does not set forth any facts that demonstrate any of the individual Defendants had the authority to return Plaintiff's property once it was seized and identified as possible evidence in a criminal prosecution.  That pleading shortcoming is particularly significant in this case, given the subsequent federal indictment predicated on the same physical evidence.  It would logically follow that Plaintiff's marijuana and marijuana plants were transferred to the United States Attorney's Office or unidentified federal law enforcement officials.  This court is left to speculate on the disposition of Plaintiff's marijuana once Mr. Jones entered his guilty plea to the federal firearms charge on January 14, 201 and the government agreed to dismiss the drug offenses

pursuant to the parties' plea agreement.[18]   Moreover, there are no facts alleged in the Second Amended

Complaint that suggest Defendants had the authority to direct the action of those federal agencies, or

supercede federal law dealing with forfeiture of controlled substances.   In the absence of such

allegations, however, the Seventh Claim fails to set forth a constitutional violation against Defendants.

Under Colorado common law, a party may bring a claim for conversion, an intentional tort,

against a person who maintains "any distinct, unauthorized act of dominion or ownership . . . over

personal property belonging to another."   *Harris Group, Inc. v. Robinson* , 209 P.3d 1188, 1199 (Colo.

App. 2009).   *Cf. Walker v. City of Denver*, 720 P.2d 619, 623 (Colo. App. 1986) (holding that a cause

of action for trespass and/or conversion may lie where police officers exceeded their authority under a

search warrant and permanently removed fixtures from plaintiff's real property).   Once again,

however, there are no well-pled facts in the Second Amended Complaint that identify which, if any, of

the named Defendants exercised such "unauthorized dominion or ownership" of the Plaintiff's

property once the state charges were dismissed.   While I am not precluding, at this juncture, the

possibility that Mr. Jones could properly assert a claim for common law conversion or trespass, the

Seventh Claim falls short of the required pleading standard and should be dismissed without prejudice.

5.   The Eighth Claim

Mr. Jones styles his Eighth Claim as "Stigma-Plus," suggesting that Defendants "impugned

[his] good name, reputation, honor, and/or integrity" by "making false statements that impugned the

Plaintiff's good name" and by characterizing his business as a "clandestine grow operation."   Plaintiff

supports this claim by merely incorporating "each and every allegation" set forth in preceding

---

[18]I note, however, that 21 U.S.C. § 881(a) (2) and (8) provides that "all raw materials" used or intended for use in the manufacture of any controlled substance and "all controlled substances which have been possessed" in violation of the Controlled Substances Act are subject to forfeiture and no property right in those items may be claimed.  Any controlled substances subject to forfeiture may be destroyed at the direction of the Attorney General.  *See* 21 U.S.C. § 881(f).

paragraphs of the Second Amended Complaint.  Unfortunately, those allegations will not defeat a

motion under Rule 12(b)(6).

A stigma-plus claim is brought under the Due Process Clause of the Fourteenth Amendment.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the

government is doing to him, a protectible liberty interest may be implicated that requires procedural

due process in the form of a hearing to clear his name."  *McKean v. Hernandez*, No. 09-cv-1129-

WJ/LAM, 2010 WL 8752033, at *9 (D.N.M. Sept. 30, 2010), quoting *Gwinn v. Awmiller*, 354 F.3d

1211, 1216 (10th Cir. 2004).  However, a stigma-plus claim is unavailing where adequate process was

available to clear the plaintiff's name or reputation.  *Bell v. Board of Education*, No. Civ. 06-1137

JB/ACT, 2008 WL 4104118, at *17 (D. N.M. May 6, 2008).  To sustain this claim, a plaintiff must

demonstrate that (1) the government made a false statement about the plaintiff that was sufficiently

derogatory to injury the plaintiff's reputation, (2) the statement is capable of being proved false; and

(3) the plaintiff experienced some governmentally imposed burden that "significantly altered [his]

status as a matter of law."  *See Kennedy v. Smith*, No. 07-7035, 259 F. App'x 150, 155 (10th Cir. Dec.

26, 2007) (holding that "[d]amage to one's reputation alone . . . is not enough to implicate due process

protections").  A plaintiff must establish that the allegedly stigmatizing information was published,

*Workman v. Jordan*, 32 F.3d. 475, 481 (10th Cir. 1994), and this element cannot be satisfied simply by

showing that the challenged statements were exchanged among governmental offices or agencies.

*Harrison v. Board of City Commissioners*, 775 F. Supp. 365, 367 (D. Colo. 1991).  *See also Diehl v.*

*Albany County School District N. 1*, 694 F. Supp. 1534, 1537 (D. Wyo. 1988) (holding that

"statements made in the course of a judicial proceeding . . . do not support a liberty interest claim").

Moreover, the plaintiff must demonstrate that the stigmatizing statement caused a tangible injury.  *See*

*Phelps v. The Wichita Eagle-Beacon*, 886 F.2d 1262, 1268-69 (10th Cir. 1989) (holding that

speculative harm to prospective relationships or future employment is too intangible to constitute

deprivation of a liberty interest).

When considering the allegations in the Second Amended Complaint against this backdrop of established precedents, I conclude that Mr. Jones has failed to plead facts that demonstrate a plausible stigma-plus claim.

 6. The Ninth Claim

In support of this claim, Mr. Jones contends that Colorado "created a liberty that the Plaintiff enjoyed including being able to grow, use, and sell marijuana for medicinal purposes," and that Defendants violated his Fourteenth Amendment due process rights by acting "in an arbitrary and/or capricious manner." (*See* doc. # 12 at 25 of 29).

The Supreme Court had occasion to address the scope of the Fourteenth Amendment's Due Process Clause in *Wilkinson v. Austin*, 545 U.S. 209 (2005), noting that the constitutional right

> protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.

*Id.* at 221. Stated differently, "a plaintiff must demonstrate: (1) the deprivation of a liberty or a property interest and (2) that no due process was afforded." *Stears v. Sheridan County Memorial Hospital Board of Trustees*, 491 F.3d 1160, 1162 (10th Cir. 2007). In the absence of a protected liberty or property interest, there is no due process requirement. *McKean v. Hernandez*, 2010 WL 8752033, at *6. Based on the allegations contained in the Second Amended Complaint, I do not find that Mr. Jones has alleged a protected liberty or property interest relating to his ability "to grow, use, and sell marijuana for medicinal purposes."

In 2000, Colorado voters passed Amendment 20 and thereby added Article XVIII, section 14 to the Colorado Constitution. This provision provides, in pertinent part, that with certain enumerated limitations and exceptions, "it shall be an exception from the state's criminal laws for any patient or

primary care-giver in lawful possession of a registry identification card to engage or assist in the medical use of marijuana." Colo. Const. art. XVIII, § 14(2)(b).

> [A] patient or primary care-giver charged with a violation of the state's criminal laws related to the patient's medical use of marijuana will be deemed to have established an affirmative defense to such allegation where:
>
> > (I)  The patient was previously diagnosed by a physician as having a debilitating medical condition;
> >
> > (II)  The patient was advised by his or her physician, in the context of a bona fide physician-patient relationship, that the patient might benefit from the medical use of marijuana in connection with a debilitating medical condition; and
> >
> > (III)  The patient and his or her primary care-giver were  collectively in possession of amounts of marijuana only as permitted under this section.[19]

In considering passage of Amendment 20, Colorado voters were told that "[c]urrent Colorado and federal criminal law prohibits the possession, distribution, and use of marijuana," and that under "the [proposed Amendment] . . . distribution of marijuana will still be illegal in Colorado." *People v. Clendenin*, 232 P.3d 210, 215 (Colo. App. 2009).  *See also* Colo. Const. art. XVIII, § 14(2)(d) ("Notwithstanding the foregoing provisions, no person, including a patient or primary care-giver, shall be entitled to the protection of this section for his or her acquisition, possession, manufacture, production, use, sale, distribution, dispensing, or transportation of marijuana for any use other than medical use.").

I find, as a matter of law, that Colorado's medical marijuana regime does not create a protected

---

[19]Article XVIII, § 14(4)(a) states that "a patient may engage in the medical use of marijuana that is medically necessary to address a debilitating medical condition," and the patient's medical use of marijuana is limited to no more than two ounces of marijuana or six plants.  "For quantities of marijuana in excess of these amounts, a patient . . . may raise as an affirmative defense . . that such greater amounts were medically necessary to address [his] debilitating medical condition."  *Id.* at § 14(4)(b).  The Second Amended Complaint alleges that Jones had a "red card" prescription that allowed him "to grow or possess up to 25 mature, flowering marijuana plans" and "grow or possess up to a total of 50 plans counting non-mature, non-flowering ones."

liberty interest.  *Cf. Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) (noting that while "medical and conventional wisdom . . . recognizes the use of marijuana for medical purposes is gaining traction in the law . . . that legal recognition has not yet reached the point where a conclusion can be reached that the right to use medical marijuana is 'fundamental' and 'implicit in the concept of ordered liberty'").  Colorado courts consistently have held that Article XVIII, section 14 does not establish a broad or unlimited constitutional right to use marijuana, but rather a limited exception "from the state's *criminal* laws for any patient or primary care-giver in lawful possession of a registry identification card to engage or assist in the medical use of marijuana."  *Beinor v. Industrial Claim Appeals Office*, 262 P.3d 970, 975 (Colo. App. 2011) ("In addition to placing quantity limits on possession of medical marijuana, it is also apparent that the constitutional amendment was not intended to create an unfettered right to medical use of marijuana.").  *See also People v. Watkins*, 282 P.3d 500, 504 (Colo. App. 2012) (noted that "the Amendment created a defense to criminal prosecution and is not a 'grant to medical marijuana users of an unlimited constitutional right to use the drug in any place or any manner;" held that the defendant's use of medical marijuana may be curtailed during a probationary sentence to the extent such possession would violate federal criminal law and, therefore, violate a term of the defendant's state  probation); *Giuliani v. Jefferson County Board of County Commissioners*, No. 11CA1919, __ P.3d __, 2012 WL 5360940, at *4 (Colo. App. Nov. 1, 2012) (noting that the Amendment did not establish an "unfettered" right, but rather defined "the limited circumstances in which a patient may legally use medical marijuana").

Article XVIII, section 14 of the Colorado Constitution, by its very terms, creates an "affirmative defense" to conduct that is otherwise prescribed by criminal statutes.[20]  However, an

---

[20]Under Colorado law, once an affirmative defense is raised, the prosecution must establish guilt beyond a reasonable doubt as to the affirmative defense, as well as all other elements of the offense.  *People v. Gallegos*, 628 P.2d 999, 1002 (Colo. 1981).

affirmative defense only arises after criminal charges are filed and a prosecution actually commences. *Cf. United States v. Call*, No. 2:09-cr-00079-KJD-RJJ, 2009 WL 6047137, at *7 (D. Nev. Nov. 24, 2009) (holding that while an affirmative defense of entrapment may prove meritorious at trial, it is not material to the question of whether a search warrant should be issued which is otherwise sufficient on its face); *United States v. Schmidt*, No. 4:09CR00265 ERW, 2009 WL 2836460, at *7 (E.D. Mo. Aug. 27, 2009) (while a federal statute might provide an affirmative defense to a charge of child pornography, that affirmative defense does not change the standard for probable cause in suspected child pornography cases).

It necessarily follows that the search warrant affidavits submitted by Defendant Lehmkuhl did not violate a fundamental right to use medical marijuana protected by the Fourteenth Amendment. The analysis in *United States v. Ellis*, No. 1:12-CR-91, 2012 WL 6720539 (W.D. Mich. Dec. 19, 2012) is instructive. As in Colorado, Michigan's Medical Marihuana Act establishes an affirmative, state-law defense in the prosecution of patients or primary care-givers, however "the defense is a narrow one" and "does not abrogate state criminal prohibitions of the manufacturing of marijuana." *Id.* at 6720539, at *1. In *Ellis*, police officers obtained a warrant to search the defendant's home. In the course of that search, officers found 189 marijuana plants growing in the basement. In moving to suppress the fruits of that search, Mr. Ellis argued that the search warrant affidavit prepared by police officers was deliberately misleading which invalidated the resulting warrant. The court rejected that argument, explaining that

> regardless of whether Ellis has, or does not have a license [to be a caregiver under the Michigan medical marijuana program], it is still a crime under both Michigan and federal law to manufacture marijuana. As an affirmative defense, the [Michigan Medical Marihuana Act] merely has the potential to excuse a defendant's criminal act; it does not negate any element of the crime. Thus, when a magistrate judge is asked to determine whether there is probable cause to believe that a suspect's home harbors evidence of the crime of manufacturing marijuana, MMMA licensure is really beside the point.

*Id.* at 6720539, at *5. *See also People v. Sexton*, 296 P.3d 157 (Colo. App. 2012) (in a case implicating the affirmative defense of medical use of marijuana, the defendant argued that the search of his property lacked probable cause; held that "officers need not 'refrain from searching premises under circumstances in which the activity in question could *potentially* be legal,' as long as the circumstances also support a reasonable belief that evidence of illegal activity will be found"). Because I find that Colorado's medical marijuana regime does not implicate a fundamental liberty or property right, there is no need to address the due process element.

Plaintiff's Ninth Claim has no more traction when analyzed under substantive due process standard. The Due Process Clause has been construed to "cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998), *abrogation on other grounds recognized in Smiley v. Alabama Dept. of Transp.*, 778 F. Supp. 2d 1283, 1300 n. 14 (M.D. Ala. 2011). "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 2008). One strand of the substantive due process doctrine "protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Id.* The Ninth Claim fails under either strand of the substantive due process doctrine.

Apart from a conclusory reference to a "liberty" interest in growing, using and selling marijuana, Mr. Jones does not explain how this purported liberty interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Yet, the Tenth Circuit has noted that "a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits

within the Constitution's notions of ordered liberty." *Seegmiller v. Laverkin City*, 528 F.3d at 769. While I can appreciate Plaintiff's *pro se* status, I must also find that he has failed to make the requisite showing to satisfy the fundamental rights analysis.  Moreover, my own research has failed to reveal any historical or legal antecedents that suggest the production, use or sale of marijuana should be elevated to a fundamental constitutional right.  *But see Lambert v. Hartman*, 517 F.3d 433, 443 (6th Cir. 2008) (noting that "identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short").

Although Mr. Jones has not explicitly invoked the conscience shocking prong of the substantive due process standard, I am hard pressed to see how that standard could be met under the facts of this case.  Certainly, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. at 848.  Rather, Mr. Jones must point to "conduct intended to injure in some way unjustifiable by any government interest." *Id.*  I do not find that Mr. Jones has alleged facts that demonstrate that meet this standard, particularly given the fact that Article XVIII, section 14 provides only a limited exemption to the broad prohibition on the acquisition, possession, manufacturer, production, use, sale, distribution, dispensing, or transportation of marijuana .  At best, the Second Amended Complaint alleges Defendants mis-used their authority to investigate suspected criminal conduct.  That showing will not suffice to assert a substantive due process violation. *Cf. Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (noting that to properly allege a substantive due process violation, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)).

7.    The Tenth Claim

This Claim invokes the "danger-creation exception."  Plaintiff contends that Defendants

intended to place him unreasonably at risk, that Mr. Jones was in a limited class of persons "authorized

by the state to possess, use and cultivate marijuana for medicinal purposes," and that Defendants'

conduct placed him at "substantial risk of serious, immediate and proximate harm." (*See* doc. 3 12 at

26 of 29).

The Tenth Circuit addressed the "state-created danger theory" in *Schwartz v. Booker*, 702 F.3d

573 (10th Cir. 2012).  In that case the Tenth Circuit acknowledged that "generally, state actors are only

liable for their own acts, not for acts of private violence, but that "the state-created danger theory

applies when the State creates or increases a danger of harm of private violence to an individual." *Id.*

at 579-80.  To invoke the state-created danger theory successfully,

Mr. Jones must establish the following elements:

> 1) Plaintiff was a member of a limited and specifically definable group; 2) Defendant's
> conduct put Plaintiff at substantial risk of serious, immediate and proximate harm; 3)
> the risk was obvious or known; 4) Defendant acted recklessly in conscious disregard of
> that risk; . . . 5) such conduct, when viewed in total is conscious shocking[;] [and 6)]
> defendant actors created the danger or increased the plaintiff's vulnerability to the
> danger in some way.

*Id.* at 580 (quoting *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1229 (10th Cir. 2000)).  In

*Schwartz,* the Tenth Circuit specifically held that "affirmative conduct by the state actor and a private

act of violence are preconditions to application of this exception."  *Id.* at 580 n. 4 (citing *Gray v.

University of Colorado Hospital Authority*, 672 F.3d 909, 928 (10th Cir. 2012).

The Second Amended Complaint does not present well-pled factual allegations that support

these essential elements.  More particularly, Plaintiff does not allege that he was the victim of any

private act of violence, or that Defendants engaged in any conduct that created such a danger or

substantially increased his vulnerability to a private act of violence.  If the Tenth Claim purports to

allege a constitutional violation under the Due Process Clause of the Fourteenth Amendment, it fails to

meet the pleading requirements established by the Supreme Court in *Iqbol* and *Twombly* and should be

dismissed on those grounds.

       8.    <u>Qualified Immunity</u>

To the extent that Mr. Jones is suing Defendants in their individual capacities under § 1983, Defendants raise the defense of qualified immunity.  Whether Defendants are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  This court must review Defendants' claim of qualified immunity "under the customary motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*  However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege. *See Saucier v. Katz*, 533 U.S. at 201.

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As Mr. Jones has failed to state any constitutional or federal claim upon which relief can be granted, Defendants in their individual capacities are entitled to qualified immunity from his claims brought pursuant to § 1983.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his

burden to show violation of a constitutional right).

C.    Plaintiff's _State Law Claims_

Mr. Jones suggests the court has "supplemental jurisdiction" over his state law claims pursuant to 28 U.S.C. § 1367. I note, however, that all the named defendants are residents of the State of Colorado, while Mr. Jones was incarcerated in Sheridan, Oregon at the time he filed the Second Amended Complaint. Plaintiff also contends that Defendants' unconstitutional and/or tortious conduct caused damages in the amount of no less than $185,000.00. _See_ Second Amended Complaint (doc. #12), at 23 of 29. In light of the foregoing facts and allegations, the court will presume that it also has subject matter jurisdiction under 28 U.S.C. § 1332.

1.    The Second Claim

Plaintiff's claim for intentional or reckless outrageous conduct, requires proof that: (1) Defendants engaged in extreme and outrageous conduct; (2) that they did so recklessly or with the intent to cause Mr. Jones severe emotional distress; and (3) that Defendants' conduct caused Plaintiff severe emotional distress. _See Reigel v. SavaSeniorCenter LLC_, 292 P.3d 977, 990 (Colo. App. 2011). However, the conduct that forms the underpinning of an outrageous conduct claim "must be 'so extreme in degree as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." _Winkler v. Rocky Mountain Conference of United Methodist Church_, 923 P.2d 152, 160 (Colo. App. 1995), citing _Rugg v. McCarty_, 476 P.2d 753, 756 (1970). While mere indignities, annoyances or "petty oppressions" will not suffice to establish the level of outrageousness required for this cause of action, _Pearson v. Kancilia_, 70 P.3d 594, 497 (Colo. App. 2003), "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other." _Zalnis v. Thoroughbred Datsun Car Co._, 645 P.2d 292, 294 (Colo. App. 1982).

In determining whether a plaintiff has alleged behavior that is outrageous as a matter of

> law, the trial court must analyze the totality of the defendant's conduct.  Generally,
> liability for outrageous conduct exists when "the recitation of the facts to an average
> member of the community would arouse his resentment against the actor, and lead him
> to exclaim 'Outrageous!'"

*Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009).

To support this Claim, Mr. Jones merely alleges that Defendants intentionally or recklessly "conducted themselves toward the Plaintiff in a manner so extreme, outrageous, and shocking that it exceeded all possible boundaries of decency and regarded as atrocious, and utterly intolerable in a civilized community."  Apart from this sweeping statement, the Second Claim merely repeats the allegations previously set forth in the Second Amended Complaint.

I do not doubt that Plaintiff considered the events of February 19, 2010 to be disturbing or that he reacted emotionally to Defendants' actions that day.  However, it is difficult to identify the specific conduct that Plaintiff contends is "atrocious, and utterly intolerable in a civilized community."  *Cf. Barnes v. City of Oklahoma City ex rel. Oklahoma City*, No. CIV-10-1338-D, 2011 WL 5326251, at *5 (W.D. Okl. Nov. 3, 2011) (holding that while the defendant police detective may have been negligent or may have used poor judgment, "the Court cannot say that Plaintiffs describe conduct by Defendant Flint that could reasonably be regarded as beyond the bounds of decency and intolerable in a civilized society").  More importantly, it is impossible to determine from the face of the Second Amended Complaint which defendant or defendants engaged in that activity.  *See, e.g., VanZandt*, 276 F. App'x at 849 ("To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term "defendants.").

2.     The Fifth Claim

Mr. Jones alleges that in executing their search on February 19, 2010, Defendants "failed to knock and announce and instead broke down [his] front door which caused unnecessary damage to the . . . property of the Plaintiff" in the amount of $2,000.  (*See* doc. # 12 at 21 of 29). If this claim is

asserting a Fourth Amendment violation, it is duplicative of the First Claim and can be dismissed on that basis.

Alternatively, Mr. Jones may be asserting a common law claim for trespass. To sustain that cause of action, a plaintiff must allege facts that plausibly demonstrate a defendant physically intruded upon the plaintiff's property without his proper permission. *Betterview Investments, LLC v. Public Service Co.*, 198 P.3d 1258, 1262 (Colo. App. 2008). The fact that Defendants were executing a search warrant at the time they entered onto Plaintiff's property, standing alone, does not bar a common law claim for trespass. *See, e.g., Walker v. City of* Denver, 720 P.2d 619, 623-24 (Colo. App. 1986) (holding that police officers could be liable in trespass at the point they exceeded the scope of the privilege defined by statute and the terms of the search warrant). Once again, however, the Second Amended Complaint does not differentiate among the various defendants or attribute specific conduct to a particular defendant. While Plaintiff might have sufficient facts to properly plead a trespass claim, so particularized facts are not contained in the Second Amended Complaint.

3.    The Sixth Claim

To assert a plausible common law claim for intentional interference with prospective business relations, Mr. Jones must allege facts that show Defendants' improper and intentional interference prevented the formation of a contract between Plaintiff and a third party. *See, e.g., MDM Group Associates, Inc. v. CX Reinsurance Company, Ltd.*, 165 P.3d 882, 886 (Colo. App. 2007) (noting that "[i]nterference with 'another's prospective contractual relation' is tortious only if there is a reasonable likelihood or reasonable probability that a contract would have resulted"). Similarly, the tort of intentional interference with contractual relations requires proof that the defendant intentionally and improperly interfered with the performance of a contract by inducing or otherwise causing a third party to not perform a contract with the plaintiff. *See, e.g., Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 721 (Colo. App. 2002) ("Generally, tortious interference with contract rights must involve a wrongful

42

act or a legal act performed in an unlawful manner).

Even when liberally construed, the Sixth Claim is devoid of factual content.  Apart from "reiterating each and every allegation" contained in preceding paragraphs, Mr. Jones merely asserts that "Defendants intentionally interfered with the business relations and prospective advantage of the Plaintiff through their actions."  *Cf. Twitchell v. Hutton*, No. 10-cv-01939-WYD-KMT, 2011 WL 318827, at *6 (D. Colo. Jan. 28, 2011) (Daniel, J.) (holding that the plaintiff's allegations were not sufficient to state a claim for relief, where the "allegations [were] conclusory in nature and merely recite boilerplate language without providing any support factual allegations").  The Second Amended Complaint alleges that Mr. Jones "established a business to provide medical marijuana products and services," obtained a "Sales Tax License" in which he listed his business address as 5170 Hunter Run, Colorado Springs, Colorado, and purchased advertisements in a local weekly newspaper.  There are no factual allegations that suggest the individually named Defendants were aware of Plaintiff's "business relations" or prospective business opportunities, or that Defendants initiated a criminal investigation with the intent to interfere with Plaintiff's business endeavors.  The Sixth Claim provides no information concerning the nature of the "business relations" or the  "prospective advantages" that Mr. Jones contends were compromised simply by virtue of Defendants' search of his residence.  I concede that the resulting drug and firearms offenses, as well as Mr. Jones's subsequent federal conviction, may have had an adverse effect on his nascent dispensary business.  However, there are no facts alleged that indicate the individually named Defendants played any part in those charging decisions or the resulting prosecution

    4.    <u>The Eleventh Claim</u>

Plaintiff's last claim for relief could best be described as a "shotgun pleading" or grab-bag of legal theories.  The Eleventh Claim, once again, "reiterates each and every allegation contained" in preceding paragraphs, and then contends those acts "constitute actionable torts under Colorado

common law and the laws of the State of Colorado" including:  false arrest and imprisonment, assault

and battery, malicious prosecution, abuse of process, intentional infliction of emotional

distress/outrageous conduct, negligent infliction of emotional distress/outrageous conduct, reckless

infliction of emotional distress/outrageous conduct, negligence and gross negligence.  (*See* doc. # 12 at

27 of 29).

The Eleventh Claim resembles the "shotgun pleadings" criticized in *PVC Windoors, Inc. v.*

*Babbitbay Beach Const., N.V.* 598 F.3d 802, 806 n. 4 (11th Cir. 2010).

> The amended complaint is a typical shotgun pleading. This court has condemned such
> pleadings in a series of cases stretching back at least as far as *Pelletier v. Zweifel*, 921
> F.2d 1465, 1517-18 (11th Cir.1991) (describing such pleadings as "replete with factual
> allegations that could not possibly be material to any of the causes of action they
> assert"), and we do so once more here. Shotgun pleadings impede the administration of
> the district courts' civil dockets in countless ways.

*Id.   See also United States ex rel. Carpenter v. Abbott Laboratories, Inc.*, 723 F. Supp. 2d 395, 411

n.27 (D. Mass 2010) (noting that plaintiff had failed to meet the requirements of Fed. R. Civ. P. 10(b)

by pleading a federal and thirteen separate state claims under a single count); *Thompson v. Florida*

*Bar*, 526 F. Supp. 2d 1264, 1267-68 (S.D. Fla. 2007) (criticizing plaintiff's 45-page verified third

amended complaint as a "shotgun" pleading, to the extent each of the three counts improperly

incorporated by reference all of the allegations in the previous counts in "complete disregard" of the

pleading requirement enunciated in Rule 10(b)).

While the court presumes that Plaintiff's various "state law theories" relate back to the search

and arrest on February 19, 2010, the reader is still left to guess at the factual basis for each discrete

theory or at what point along the continuum of conduct each alleged wrong may have been committed.

Moreover, the Eleventh Claim fails to articulate whether, or to what extent, each individual defendant

engaged in each of the referenced common law torts.  This court will not presume that Plaintiff could

never make such a showing; for purposes of the pending motion, it is enough to find that the Eleventh

Claim in its present form does not meet that standard.

     5.    <u>Statute of Limitations</u>

Defendants also argue that Plaintiff's state common law claims are barred by the applicable statute of limitations. Section 13-80-103(1)(a) of the Colorado Revised Statutes establishes a one-year limitation period for "all actions against police officers . . . and any other law enforcement authority."[21] Mr. Jones commenced this action on September 12, 2011 with the filing of his original Complaint and Application to Proceed in *Forma Pauperis*. The Second Amended Complaint does not describe any conduct by the named Defendants that occurred after February 19, 2010, or any event involving local law enforcement authorities after April 2010 when charges were "dismissed by motion of the State of Colorado." *But see Colburn v. Kopit*, 59 P.3d 295, 296 (Colo. App. 2002) (for statute of limitations purposes, a claim accrues at the time plaintiff knows, or has reason to know the facts that underlie or are essential to the cause of action).

A complaint is subject to dismissal for failure to state a claim for relief if the allegations in the complaint show that relief is barred by the applicable statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007). *Cf. Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 352 (1990) ("'[a] complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading,' rendering dismissal appropriate").

> [D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense. . . . Further, the plaintiff bears the burden of "plead[ing] circumstances which would indicate why the [cause of action] was not

---

[21]*See Persichini v. Brad Ragan, Inc.*, 735 P.2d 168, 172 Colo. 1987) ("In the absence of a clear expression of legislative intent to the contrary, a statute of limitations specifically addressing a particular class of cases will control over a more general or catch-all statute of limitations.").

discovered earlier and which would indicate why the statute should be tolled."

*Owner Operator Independent Drivers Association, Inc. v. Comerica Bank*, 540 F. Supp.2d 925, 929

(S.D. Ohio 2008) (internal citations omitted).  *See also Walton v. Potter*, No. 05-C-3809, 2006 WL

3341187, *1 (N.D. Ill. Nov. 16, 2006) ("The statute of limitations issue may be resolved definitively

on the face of the complaint when the plaintiff pleads too much and admits definitively that the

applicable limitations period has expired.  But, '[u]nless the complaint alleges facts that create an

ironclad defense, a limitations argument must await factual development.'").  *See also Colburn*, 59

P.3d at 297 ("where it is shown that the plaintiff discovered, or reasonably should have discovered, the

alleged tortious conduct as of a particular date, the statute of limitations issue may be decided as a

matter of law").

Under Colorado law, a cause of action "for injury to person, property [or] reputation" accrues,

and the applicable statute of limitations begins to run, "on the date both the injury and its cause are

known or should have been known by the exercise of reasonable diligence."  *See* C.R.S. § 13-80-

108(1).  Based on Plaintiff's own allegations, I find that the state law claims for false arrest, false

imprisonment, intentional infliction of emotional distress/outrageous conduct, negligent infliction of

emotional distress/outrageous conduct, reckless infliction of emotional distress/outrageous conduct,

assault and battery, negligence and gross negligence are barred by the one-year statute of limitations

applicable to "all actions" against law enforcement officers.  Mr. Jones clearly was on notice of the

alleged tortious conduct on February 19, 2010, and certainly no later than April 2010.  As these claims

were filed for the first time well after April 30, 2011, they should be dismissed as untimely.

Plaintiff's putative state law claims for malicious prosecution and abuse of process require

further discussion.  For purposes of the pending motion, I will assume that Plaintiff's common law

claim for malicious prosecution does not relate to the search warrant applications submitted by

Defendant Lehmkuhl, but rather to the criminal charges that were filed and then dismissed by state authorities.  *See People v. Macrander*, 828 P.2d 234, 240 (Colo. 1992) ("One of the statutory requirements of a criminal prosecution, whether initiated by indictment or information, is that it be signed by the person authorized by law to prosecute the offense - namely, the district attorney of the judicial district in which the alleged crime was committed.").[22]  However, in Colorado, it is also well-established that a common law claim for malicious prosecution does not accrue until the underlying criminal case is terminated in the plaintiff's favor.  *See, e.g., Allen v. City of Aurora*, 892 P.2d 333, 335 (Colo. App. 1995).  *Cf. Masters v. Castrodale*, 121 P.3d 362, 364 (Colo. App. 2005) (holding that "the successful termination of criminal proceedings generally is a condition precedent to recovery in a malicious prosecution action").  Moreover, "[f]avorable termination is a question of law for the court to decide."  *Hewitt v. Rice*, 154 P.3d 408, 416 (Colo. 2007).  Because a favorable termination requires some form of disposition "which indicates the innocence of the accused," a prosecutor's election to dismiss charges, standing alone, does not necessarily equate to a favorable termination.  *Allen v. City of Aurora*, 892 P.2d at 335-36.  Here, there are no well-pled facts in the Second Amended Complaint to suggest the State's decision to dismiss charges against Mr. Jones equated to a finding of innocence or to indicate when, if at all, the malicious prosecution claim accrued.  At this juncture, Plaintiff's common law claim for malicious prosecution could not be dismissed on statute of limitations grounds.

Plaintiff's putative abuse of process claim, however, stands on a different footing.  "In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a

---

[22]There are no facts alleged in the Second Amended Complaint that indicate the individual Defendants had any role in the decision to initiate criminal proceedings against Mr. Jones.  That pleading deficiency alone might be fatal to Plaintiff's malicious prosecution claim.  *See, e.g., Hewitt v. Rice*, 154 P.3d at 411 (noting that a claim for malicious prosecution requires, *inter alia*, proof that the "defendant contributed to bringing a prior action against the plaintiff").

proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d at 414.  *See also Moore v. Western Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007) ("A cause of action for abuse of process reflects the need to protect the integrity of judicial proceedings, [and] [t]hus, the general rules is that 'the judicial process must in some manner be involved.'").  I will presume, for purposes of the pending motion, that Plaintiff's abuse of process claim is directed to the search warrants sought and obtained by Defendant Lehmkuhl.  However, unlike a claim for malicious prosecution, a cause of action for abuse of process does not require the plaintiff to prove favorable termination.  *Hewitt v. Rice*, 154 P.3d at 414. Plaintiff's claim for abuse of process accrued for the purposes of a statute of limitations when the alleged wrongful acts occurred.  Consequently, Mr. Jones knew, or in the exercise of reasonable diligence should of known, of any injuries resulting from the February 19, 2010 search on that day, and certainly by the end of April 2010 when state charges were dismissed.  I find as a matter of law that this common law claim must be dismissed as untimely.

## CONCLUSION

Accordingly, for the foregoing reasons, the court RECOMMENDS that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (doc. #40) be granted and that:

1.      Defendants Yohn, Harmon, and Poole be dismissed form this civil action without prejudice for failure to plead facts to support a claim upon which relief can be granted against them.

2.      Claim One be dismissed *with prejudice* for failure to state a claim upon which relief can be granted as a matter of law as to Mr. Jones's claims (e) to be free from intentional infliction of great emotional distress, (f) to be free from being subjected to outrageous conduct, (g) to be free from negligence in the performance of police duties, (i) to due process of law, (j) to be secure in his right to bodily integrity, and (l) to be free from a sham prosecution.

3.      Claim One be dismissed *without prejudice* as to Mr. Jones's claims (a) to be free from

unreasonable arrest, search and seizure, (b) to be free from warrantless arrest, search, and seizure, (c) to be free from search and seizure without probable cause, and (k) to be free from malicious prosecution, as barred by *Heck v. Humphrey*, 512 U.S. at 477.

4.      Claim One be dismissed *without prejudice* as to Mr. Jones's claims (d) to be free from use of excessive force, (h) to be free from summary punishment without trial, and (m) to freedom of expression, for failure to plead facts to support a claim upon which relief can be granted.

5.      Claim Two, to the extent that it alleges a federal claim, be dismissed as duplicative of Mr. Jones's allegations in Claim One, and to the extent that it alleges a state law claim, be dismissed with prejudice as barred by the statute of limitations.  Claim Two also fails to plead facts that support a claim upon which relief can be granted.

6.      Claim Three, to the extent that it alleges a federal claim, be dismissed as duplicative of Mr. Jones's allegations in Claim One, and to the extent that it alleges a state law claim, be dismissed with prejudice as barred by the statute of limitations.  Claim Three also fails to plead facts that support a claim upon which relief can be granted.

7.      Claim Four, to the extent that it alleges a federal claim, be dismissed without prejudice for failure plead facts that support a claim upon which relief can be granted.

8.      Claim Five, to the extent that it alleges a federal claim, be dismissed as duplicative of Mr. Jones's allegations in Claim One, and to the extent that it alleges a state law claim, be dismissed with prejudice as barred by the statute of limitations.  Claim Five also fails to plead facts that support a claim upon which relief can be granted.

9       Claim Six, to the extent that it alleges a state law claim, be dismissed with prejudice as barred by the statute of limitations.  Claim Six also fails to plead facts that support a claim upon which relief can be granted.

10.     Claim Seven, to the extent that it alleges a federal claim, be dismissed without prejudice for failure plead facts that support a claim upon which relief can be granted.

11.     Claim Eight, to the extent that it alleges a federal claim, be dismissed without prejudice for failure plead facts that support a claim upon which relief can be granted.

12.     Claim Nine, to the extent that it alleges a federal claim, be dismissed with prejudice.

13.     Claim Ten, to the extent that it alleges a federal claim, be dismissed without prejudice for failure plead facts that support a claim upon which relief can be granted.

14.     Claim Eleven, alleging one federal and thirteen state law claims, be dismissed with prejudice as barred by the statute of limitations as to all claims *except* the claim for malicious prosecution.  To the extent that the claim for malicious prosecution is a federal claim, the court recommends that it be dismissed as duplicative of Mr. Jones's allegations in Claim One and for failure to plead facts that support a claim upon which relief can be granted.

13.     As to <u>only</u> the claims dismissed without prejudice, Mr. Jones be permitted to file a Third Amended Complaint on or before a specified date.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate

review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 26th day of April, 2013.

BY THE COURT:


    s/ Craig B. Shaffer
United States Magistrate Judge